UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OTAN INVESTMENTS, LLC,

    Plaintiff,

v.

TRANS PACIFIC TRADING, LTD,

    Defendant.

CASE NO. C05-2135JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion to compel arbitration by Otan Investments, LLC (Dkt. # 11). The court has heard oral argument on the motion and has considered the papers filed in support and in opposition thereof. For the reasons stated below, the court GRANTS Otan's motion and STAYS the action.

## II. BACKGROUND

In September 2004, Plaintiff Otan Investments, LLC ("Otan"), a Washington company, entered into an agreement with a Canadian company, Defendant Trans-Pacific Trading, Ltd. ("Trans-Pacific"). The objective of the contract was "to set up joint activity for forwarding, remanufacturing and marketing wood products from fiber originating

ORDER – 1

from Russia." Tyrer Aff., Exh. A ("First Agreement"). Specifically, Otan agreed to provide the steady supply of product from its operations in Lesosibirsk, Russia, which Trans-Pacific agreed to market in North America, Europe, China and Japan. First Agreement ¶¶ 1, 2.

Just three months after the parties signed the First Agreement, the parties executed a second contract, which states in its preamble that "the Seller [Otan] owns and operates a sawmill in the Russian Federation . . . and wishes to retain the Agent [Trans-Pacific] for the purpose of selling lumber, outside Russia, and for the purpose of collecting the proceeds of sale." Tyrer Aff., Exh. B ("Second Agreement"). The Second Agreement identifies the sawmill as Otan's operation in Lesosibirsk, Russian, Second Agreement ¶ 1.2(m), and provides that Trans-Pacific will use "all reasonable commercial efforts to sell the *total production* of the Sawmill," Second Agreement ¶ 3.1(x) (emphasis added). In addition to defining the duties of each party with respect to marketing and selling wood products, the contract provides the following alternative dispute resolution ("ADR") clause:

> Where a dispute arises out of or in connection with this Agreement, or in respect of any defined legal relationship associated with it or from it (the "Dispute"), the parties will try to resolve the Dispute by participating in a structured negotiation conference with a mediator under the Commercial Mediation Rules of the British Columbia International Commercial Arbitration Centre (the "Centre").
>
> Where the parties are unable to resolve the Dispute in a structured negotiation conference, the Dispute shall be determined by arbitration in accordance with the UNCITRAL Arbitration Rules in effect [on] the date of this contract . . . .

Tyrer Aff., Exh. B (Second Agreement) ¶ 9.9. The Second Agreement does not expressly reference the First Agreement.

Otan sued Trans-Pacific in King County Superior Court for breach of contract alleging that Trans-Pacific failed to market wood products originating in Russia as

ORDER – 2

promised under the First Agreement. Compl. ¶¶ 5, 6. Trans-Pacific removed to this court on the basis of diversity jurisdiction and pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. Trans-Pacific now moves to compel arbitration over the dispute based on the ADR provision in the Second Agreement.

### III.  ANALYSIS

The Federal Arbitration Act ("FAA")[1] reflects "Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." Nicaragua v. Standard Fruit Co., 937 F.2d 469, 475 (9th Cir. 1991) (quoting Perry v. Thomas, 482 U.S. 483, 490 (1987)). Once the court determines that a valid arbitration agreement exists and that it applies to the parties' dispute, the inquiry ends and the court must direct the parties to arbitrate. Id. at 475, 478; Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration . . . .") (emphasis original). The court resolves any doubt as to the scope of arbitrable issues in favor of arbitration. Id. at 478-79; Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.").

As a threshold matter, the court holds that the ADR clause is valid and evinces the parties' intent to arbitrate. Neither party claims a contractual defect that would render

---

[1]There is no dispute that the FAA applies to this matter. The relevant FAA provision provides: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

ORDER – 3

this agreement invalid; rather, the parties' dispute goes to the *scope* of the agreement. Otan contends that the court should not compel arbitration for two primary reasons: (1) the parties' dispute arises under a separate contract (the First Agreement) from the contract containing the ADR clause (the Second Agreement) and (2) the ADR clause does not survive the termination of the Second Agreement – i.e., its scope is temporally limited.

First, the court concludes that the subject matter of the parties' dispute falls within the scope of the ADR clause. Otan contends that its breach of contract claim arises solely under the First Agreement and thus, the ADR clause in the Second Agreement does not apply. In support of its argument, Otan cites a line of cases in which courts have refused to apply an arbitration provision in one contract to a dispute arising under a wholly separate contract. See, e.g., Seabord Coast Line R.R. v. Trailer Train Co., 690 F.2d 1343, 1352 (11th Cir. 1982); Security Watch, Inc. v. Sentinel Systems, Inc., 176 F.3d 369, 372 (6th Cir. 1999); In re Hops Antitrust Litigation, 655 F. Supp. 169, 172 (E.D. Mo. 1987). Setting aside the non-binding nature of this line of authority, the court notes that the key inquiry underlying each decision is whether the two contracts at issue are either "interrelated," In re Hops, 655 F. Supp. at 172, or "separate and distinct," Seaboard, 690 F. 2d at 1351.

The rationale cited above is the same in this circuit. In a decision cited by neither party, Int'l Ambassador Programs, Inc. v. Archexpo, the Ninth Circuit considered whether an arbitration clause in a prior agreement applied to a dispute arising under a subsequent contract. 68 F.3d 337, 339-40 (9th Cir. 1995). As in the cases cited by Otan, the Ninth Circuit considered whether the two agreements at issue were "discreet" or "merely interrelated contracts." Id. at 340. Because the agreements concerned "two separate types of tours and completely different groups of tourists," the court held that the

ORDER – 4

arbitration clause did not apply.  Id.; see also Hinson v. Jusco, 868 F. Supp. 145, 148 (D.S.C. 1994) (holding that the dispute arose under one or "some mixture of the two" related contracts and thus, fell within the arbitration clause contained in the earlier agreement).

     Here, based on the terms of the contracts themselves, the court considers the two agreements entirely interrelated and thus, distinguishable from the discreet contracts in Archpexo and those at issue in the remaining out-of-circuit authority cited by Otan.  The Second Agreement, which covers Trans-Pacific's obligations as to "*the total production*" from the Lesosibirsk sawmill, is related, if not wholly intertwined, with the First Agreement that directs Trans-Pacific to market products from the very same facility.  At oral argument, Otan conceded that it did not have any evidence that the parties even conducted business in the three months between execution of the First and Second Agreements, while there is no dispute that at least some of the facts giving rise to the instant dispute occurred after the parties signed the Second Agreement.  To compel arbitration, Otan's factual allegations need only "touch matters" covered by the Second Agreement with all doubts resolved in favor of arbitrability.  Simula, Inc. v. Autolive, Inc., 175 F.3d 716, 721 (9th Cir. 1999).  In this instance, Otan's factual allegations could not be more plain: according to Otan, Trans-Pacific failed to effectively market wood products originating from its mill in Russia.  Compl. ¶¶ 5-8.  The court need not address the competing declarations that address whether the parties intended the Second Agreement to supercede the First.    Rather, the court concludes that the two contracts are interrelated and that Otan's allegations certainly "touch matters" concerning the Second Agreement.  Simula, 175 F.3d at 721; cf. Hinson, 868 F. Supp. at 148.  Accordingly, the parties' dispute falls within the breadth of the Second Agreement's ADR clause.

ORDER – 5

Lastly, Otan contends that the ADR clause does not apply because it is contained in the Second Agreement, which expired in June 2005.[2] In general, the arbitration provision in a contract survives termination of the contract unless there is clear evidence that the parties intended to override such a presumption. Nolde Bros., Inc. v. Local No. 358 Bakery and Confectionery Workers Union, 430 U.S. 243, 255 (1977). The same presumption applies even if the facts giving rise to the dispute take place after the contract expires. See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998). Accordingly, the court concludes that the ADR clause survives termination of the Second Agreement.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Trans-Pacific's motion (Dkt. # 11). The court directs the parties to pursue alternative dispute resolution consistent with the procedure outlined in the Second Agreement, ¶ 9.9. In the interim, the court STAYS the proceeding.

Dated this 20th day of April, 2006.

JAMES L. ROBART
United States District Judge

---

[2]The Second Agreement has the following sunset clause: "The term of this Agreement will commence on 1 Jan 2005 and will end on 30 June 2005 2000 [sic], and will continue thereafter only if agreed in writing by the parties." Second Agreement ¶ 2.4. The parties do not dispute that they did not renew the contract upon expiration in June 2005.

ORDER – 6